**In re Laurence S. BAKER, Debtor.**

**Bankruptcy No. 80 B 20034.**

United States Bankruptcy Court, S.D. New York.

Aug. 13, 1990.

Greenspan, Jaffe & Rosenblatt, White Plains, N.Y. (Leon J. Greenspan, of counsel), for Rodriguez.

Wolman & Carpenter, New York City, for Laurence S. Baker and Heinz Bloch.

DECISION ON ORDER TO SHOW CAUSE FOR A DETERMINATION AS TO THE DEBTOR'S CONVEYANCES OF RIGHTS WITH RESPECT TO CERTAIN PROPERTY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The individual debtor in this confirmed Chapter 11 case, like the principals in the movie "The Producers", has granted interests greater than 100% in the same property to several parties. One of the recipient parties, Agustin Rodriguez, now seeks a post-confirmation determination in this court as to the debtor's effusive conveyances of rights with respect to the property. Rodriguez also seeks to enjoin the debtor and other parties from interfering with the rights conveyed to him by the debtor, as previously approved by this court.

### Factual Background

On June 16, 1980, the debtor, Laurence S. Baker, filed with this court a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. He continued to manage and operate his property as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

Baker was the fee owner of real property located in Pleasantville, New York, which he leased to his solely-owned corporation, The Theatre Place, Inc., which conducted a dinner theatre operation at the premises. Baker produced and managed the dinner theatre productions at the premises in his capacity as sole shareholder of The Theatre Place, Inc.

The dinner theatre operated by Baker and his corporation on premises at the Pleasantville property owned by Baker was unsuccessful and was discontinued.

### The Successive Leases

On October 31, 1977, Baker leased the entire Pleasantville property to his solely-owned corporation, The Theatre Place, Inc. for a five year term. Thereafter, Baker extended this lease on January 2, 1980, for an additional twenty-four years, ending on October 21, 2006. Both the original and the extended leases did not contain any option to purchase the premises or any right of first refusal.

In August of 1981, Baker leased the second floor and attic in the building in Pleasantville to Heinz Bloch (the "Bloch Lease"), despite the fact that Baker had already leased the entire premises previously to his corporation, The Theatre Place, Inc., without retaining any possessory interest in the building. The lease granted Bloch a right of first refusal with regard to the purchase of the property. Even though Baker was then a debtor in possession as a result of his individual Chapter 11 case filing on June 16, 1980, he did not submit the Bloch lease to this court for approval in accordance with 11 U.S.C. § 363(b).

On January 11, 1982, Baker's solely-owned corporation, The Theatre Place, Inc., executed a lease to Bloch, which was signed by Baker as president of the debtor corporation. This lease related to the same second floor and attic in the Pleasantville property as was previously leased to Bloch by Baker in August of 1981, when Baker had no possessory interest in the Pleasantville building because of his previous lease

of the entire building to The Theatre Place, Inc. This lease also granted a right of first refusal to Bloch with respect to the purchase of the entire property.

On December 3, 1982, Baker, as owner of the Pleasantville property, entered into a written lease with Rodriguez for the entire first floor, basement, terrace and parking lot at the Pleasantville premises for the period ending December 31, 1987. The lease contained an exclusive purchase option, exercisable by the lessee, Rodriguez, at any time up to and including 90 days prior to the expiration of the lease at a price of $286,000.00. In the event of the exercise of the purchase option by Rodriguez, Baker agreed to convey the fee title to the property to Rodriguez, subject to a first and second mortgage on the property. The second mortgage was issued by Baker to his creditors in his Chapter 11 case pursuant to his plan of reorganization.

Paragraph # 14 in the Rider to the lease between Baker and Rodriguez provides as follows:

This lease is subject to the terms of a lease to Heinz Bloch, as tenant, for the entire second floor and attic of premises at 160 Marble Avenue, Pleasantville, New York, and lessee under this lease covenants to supply any services to which said Heinz Bloch is entitled to under said lease.

The lease between Baker, as fee owner, and Rodriguez as lessee of the first floor, basement, terrace and parking lot of premises in Pleasantville, New York was submitted by Baker, as the debtor in possession, for approval by this court pursuant to 11 U.S.C. § 363(b). This court entered an order dated November 7, 1983, which approved the lease in question. Rodriguez thereafter took possession of the portion of the property owned by Baker which was leased to him as approved by this court. Rodriguez then assigned the lease to his corporation, known as Marble Restaurant Corp., which assumed all the terms, conditions and obligations of the lease to Rodriguez. By letter dated November 25, 1983, Baker consented to the assignment of lease from Rodriguez to Marble Restaurant Corp.

On January 29, 1983, Rodriguez advanced $2,000.00 to Baker as a credit against the payment required to exercise the purchase option contained in the lease to Rodriguez. On June 20, 1983, Baker acknowledged in writing the receipt of an additional $5,000.00 advanced by Rodriguez as a credit against the purchase price called for under the option contained in the Rodriguez lease. On May 15, 1984, Baker acknowledged in writing the receipt of an additional $31,783.55 from Rodriguez to be applied as a credit against the purchase option.

On May 14, 1984, the court entered an order confirming Baker's Second Amended Chapter 11 plan of reorganization. The plan is silent as to this court's retained jurisdiction in the post-confirmation period. Baker's Chapter 11 case has not yet been closed.

On August 12, 1987, the attorney for Rodriguez wrote a letter to Baker stating that Rodriguez exercised his option to purchase the Pleasantville property as expressed in Baker's lease to Rodriguez dated December 3, 1982. There was no reference to Rodriguez's corporation, Marble Restaurant Corp., which assumed all of the terms and conditions of the lease following the assignment to it by Rodriguez.

On August 21, 1987, Heinz Bloch, to whom Baker had previously leased the second floor in the Pleasantville premises, notified Baker that he exercised a right of first refusal which was contained in his lease.

On September 14, 1987, Baker, by his attorney, notified Rodriguez that Baker could not convey the entire property in Pleasantville, New York to Rodriguez in accordance with the purchase option in the Rodriguez lease because Bloch had exercised his right of first refusal to which Rodriguez's option was subordinate.

In November of 1987, Rodriguez commenced an action against Baker in the Supreme Court of the State of New York, County of Westchester, seeking specific performance of the option contained in the

Rodriguez lease. On December 10, 1987, Rodriguez's corporation, Marble Restaurant Corporation, as assignee of the Rodriguez lease from Baker, assigned the purchase option back to Rodriguez. On October 4, 1988, Bloch intervened in the state court action commenced by Rodriguez. On November 21, 1989, the state court granted summary judgment in favor of the defendants, Baker and Bloch, on the ground that the right of first refusal contained in the lease from Baker to Bloch, dated August, 1981, had priority over the purchase option held by Rodriguez under the lease from Baker, dated December 3, 1982. The state court sustained the validity of the Bloch lease on the ground that "the Bankruptcy Court must be deemed to have ratified the Baker to Bloch lease when it approved the Baker to Rodriguez lease, inasmuch as there is the provision in the Baker to Rodriguez lease making it 'subject to' the Baker to Bloch lease." Additionally, the state court concluded that Bankruptcy Court approval of the Bloch lease might not have been required because it was made by Baker in the ordinary course of his business "as the property was held for investment and had been previously leased, the lease to Bloch would be considered as being in the ordinary course of business."

Pursuant to a petition dated July 13, 1990, Baker commenced an eviction proceeding against Rodriguez in the Village Justice Court of Pleasantville, County of Westchester, to evict Rodriguez from Baker's building in Pleasantville and to recover possession of the premises on the ground that the Rodriguez lease expired on January 31, 1990. Rodriguez seeks to restrain Baker's eviction action, alleging that he timely exercised his purchase option contained in the post-petition lease which this court approved and that he is entitled to possession as the owner of the building in question.

## DISCUSSION

Consideration must first be given to ascertaining the degree of post-confirmation jurisdiction available to this court in the context of the dispute arising out of the two post-petition leases executed by Baker with regard to different portions of space in the building owned by him. Although the Rodriguez lease relates to the first floor, terrace and parking lot, whereas the Bloch lease involves the second floor and attic, both leases give each tenant the right to purchase the same building.

The funds received by Baker as a debtor in possession under the Rodriguez lease were specifically referred to in paragraph 4.5 of Baker's confirmed plan of reorganization as the means for the execution of his Second Amended Plan. The rent received from Rodriguez in the operation of the Marble Restaurant Corp. was to be applied by the debtor to pay all taxes, insurance and the costs of his first mortgage. Additionally, Baker's Chapter 11 plan states: "Moreover, the tenant has extended (sic) substantial sums of money on renovation, so that, should the tenant decide to vacate, Debtor, would be left with a restaurant premises in magnificent condition, one in which he could easily and successfully re-open dinner theatre operation."

Even when a confirmed Chapter 11 plan is silent as to the Bankruptcy Court's retention of jurisdiction after confirmation of the plan, the court retains limited post-confirmation jurisdiction pursuant to 11 U.S.C. § 1142 for the purpose of implementing the plan. *See Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232 (4th Cir.1987); *In re Neptune World Wide Moving, Inc.*, 111 B.R. 457, 462 (Bankr.S.D.N.Y.1990). The interpretation of this court's order, dated November 7, 1983, which approved the lease from Baker to Rodriguez and which lease served as one of the sources for funding Baker's Chapter 11 plan of reorganization, confirmed by order dated May 14, 1984, qualifies as a step in the process of implementing the debtor's Chapter 11 plan. Accordingly, this court retains limited jurisdiction to interpret the contours of its previous orders in order to implement the consummation of Baker's confirmed Chapter 11 plan.

The basic issue is whether or not this court impliedly approved the earlier

Bloch lease when it approved the Rodriguez lease, which contained the rider stating that the Rodriguez lease was subject to the terms of a lease previously given by the debtor to Bloch. Manifestly, this court did not enter any order approving Baker's post-petition lease to Bloch. The order which this court entered on November 7, 1983 simply approved the Rodriguez lease and made no reference to any lease that Baker might have granted to Bloch. Indeed, the reference in the Rodriguez lease to the Bloch lease does not specify the date or the terms and conditions of the Bloch lease. Significantly, there was no indication that the Bloch lease was granted by Baker in the post-petition period. Unlike a post-petition lease, a prepetition lease does not require any court approval.

▪ In light of the fact that this court did not expressly approve the post-petition Bloch lease, there is no authority for an implied approval because 11 U.S.C. § 363(b) specifically directs that the debtor's estate may use, sell or lease property of the estate other than in the ordinary course of business only after notice and a hearing. In the instant case, there was no notice or hearing as to Baker's post-petition lease to Bloch for the second floor and attic in Baker's major asset, namely, the building which he owned in Pleasantville, New York.

The validity of the post-petition lease by Baker to Bloch requires a finding that it was granted by Baker in the ordinary course of business within the meaning of 11 U.S.C. § 363(c)(1). The state court reasoned that because the Pleasantville property was held by Baker for investment, the lease to Bloch would be considered in the ordinary course of business. In interpreting 11 U.S.C. § 363(c)(1), this court must apply what constitutes the ordinary course of business in the context of the Bankruptcy Code, which creates this statutory exception to the requirement for court approval. There was no evidence presented to this court that Baker was in the business of selling or renting real estate. He previously operated a dinner theatre on the premises through his solely-owned corporation, The Theatre Place, Inc. Certainly, the creditors of this estate had no opportunity to evaluate Bloch's financial ability to purchase Baker's major asset which served to fund his Chapter 11 plan. Although the creditors had notice of the lease to Rodriguez, which contained a purchase option, they received no notice that Baker previously entered into a post-petition lease with Bloch which gave Bloch a first refusal right to purchase the debtor's major asset. If Baker, as a debtor in possession, had submitted the Bloch lease to this court for approval, such approval would "effectively put the Court's imprimatur on the sale ...". *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 983 (Bankr.N.D.N.Y. 1988).

Baker states in his confirmed Chapter 11 plan that he is engaged in the practice of psychology in White Plains, New York where his monthly gross income from his practice exceeds his monthly gross business expenses from such practice, leaving him with a monthly net income, which when combined with his wife's income, should be sufficient to fund his Chapter 11 plan. Hence, it is abundantly clear that apart from having an investment interest in the Pleasantville building, Baker was not in the business of dealing in real estate or leases. Although the leases to Rodriguez and Bloch were necessary for the purpose of covering the expenses attributed to such building, the execution of such leases by Baker were not every-day, run of the mill transactions for him, which would normally be regarded as part of the debtor's daily business operations without requiring notice to his creditors and court approval. Indeed, the Rodriguez lease was approved by the court only upon notice to the creditors and after a hearing held in this court.

In determining the meaning of the phrase "ordinary course of business", as used in 11 U.S.C. § 363(c)(1), some courts have focused upon the transaction both from the creditors' vantage point and from the debtor's perspective to ascertain if the transaction was the type that the creditors would expect to receive notice and whether it was ordinary for the particular type of business involved. *See Burlington Northern Railroad Co. v. Dant & Russel, Inc.*

*(In re Dant & Russel, Inc.)*, 853 F.2d 700, 706 (9th Cir.1988); *In re Media Central, Inc.*, 115 B.R. 119 (Bankr.E.D.Tenn.1990); *In re Century Brass Prod.*, 107 B.R. 8, 11 (Bankr.D.Conn.1989); *Committee v. Johns Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616–18 (Bankr.S.D.N.Y.1986), *rev'd* on other grounds, 801 F.2d 60 (2d Cir.1986). As noted by the court in *In re Waterfront Companies, Inc.*, 56 B.R. 31, 34–35 (Bankr.D.Minn.1985), some post-petition transactions, either by their size or nature, are not within the day-to-day operations of a business and are, therefore, extraordinary. Surely a post-petition lease for space in a debtor's only business property, with a right to purchase the entire property is neither the type of transaction that the debtor's creditors would expect to be authorized without notice to them, nor is it the type of transaction that the debtor engaged in on a day-to-day basis. A post-petition lease which is out of the ordinary course of business and which is not authorized either by the Bankruptcy Code or the court can be disregarded pursuant to 11 U.S.C. § 549(a), which provides for the voiding of unauthorized post-petition transfers by the debtor.

> The post-filing lease and settlement agreement are void under 11 U.S.C. § 549(a) because they were post-bankruptcy transactions which were out of the ordinary course of business and which were not authorized either by the Code or the Court.

*In re Silver Wheel Freightlines, Inc.*, 64 B.R. 563, 565 (Bankr.D.Or.1986).

Bloch may not seek any additional comfort from the fact that subsequent to the August, 1981 lease from Baker, he also received a lease for the same second floor and attic, with right of first refusal, under the January 1, 1982 lease from The Theatre Place, Inc. Not having received a right of first refusal in its lease from Baker, The Theatre Place, Inc. had no such right to convey to Bloch.

■ Notwithstanding the foregoing, neither the creditors nor the creditors' committee in Baker's confirmed Chapter 11 case were served with notice of Rodriguez's application to this court. Manifestly, the creditors who expect to receive distributions under Baker's confirmed Chapter 11 plan are the ones most directly concerned with the consummation and implementation of such plan. If Baker seeks to eliminate the Rodriguez lease as a source for implementing his plan, he may not do so unilaterally without giving his creditors an opportunity to be heard with respect to the proposed modification of his confirmed Chapter 11 plan in accordance with 11 U.S.C. § 1127(b). Baker's preconfirmation creditors' committee appointed in his Chapter 11 case should be given notice of Rodriguez's application to this court and an opportunity to be heard with respect to same. Until such notice is given to the creditors' committee, this court will temporarily stay Baker and Bloch from proceeding in the state court to eliminate Rodriguez's rights under the lease with Baker, which this court approved and which serves as a source for funding Baker's confirmed Chapter 11 plan.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This court has core jurisdiction, pursuant to 28 U.S.C. § 157(b)(2)(A), over contract and lease claims under state law when the contract or lease was entered into post-petition. *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1400 (2d Cir.1990).

2. This court has limited jurisdiction pursuant to 11 U.S.C. § 1142(a) to interpret this court's order dated November 7, 1983, which approved the lease and purchase option granted by the debtor to Rodriguez, the proceeds from which constitute one of the sources for funding the debtor's Chapter 11 plan of reorganization which this court confirmed by order dated May 14, 1984.

3. The debtor's post-petition lease to Bloch was never approved by this court, neither expressly nor by implication when this court approved the debtor's lease to Rodriguez.

4. The post-petition lease which the debtor granted to Bloch was not executed by the debtor in the ordinary course of his

**30**

business within the meaning of 11 U.S.C. § 363(b)(1) and was an unauthorized post-petition transaction proscribed under 11 U.S.C. § 549(a).

5. Even though Rodriguez was the lessee under the post-petition lease with the debtor in possession, Baker, which was approved by this court and was referred to in Baker's confirmed Chapter 11 plan as the source for funding such plan, Rodriguez does not have standing in this court to enjoin Baker from seeking to evict Rodriguez from the property covered by the post-petition lease. Rodriguez is neither a creditor nor a party in interest in Baker's confirmed Chapter 11 case. However, the creditors of this estate have a right to expect that the funds generated under the Rodriguez lease will be made available to them under Baker's confirmed plan.

6. Until the creditors' committee in this case is given notice of the Rodriguez application to this court and an opportunity to be heard with respect to such application, this court will temporarily stay Baker and Bloch from proceeding in the state court to eliminate Rodriguez's rights under the lease with Baker, which this court approved and which serves as a source for funding Baker's confirmed Chapter 11 plan.